West Baton Rouge
Mark J. Graffeo
CHARLA HUNT
Suit#1048592   Div B
E-FILED ON: 10/13/23 03:53 PM
Filed on: 10/16/23 08:54 AM
# of Pages:8

# 18TH JUDICIAL DISTRICT COURT

## PARISH OF WEST BATON ROUGE

### STATE OF LOUISIANA

| | |
|---|---|
| **DRAX BIOMASS INC.** | SUIT NO. 1048592 B |
| **VERSUS** | DIV.: _____ |
| **MILTON J. WOOD FIRE PROTECTION, INC.** | |

## VERIFIED PETITION AND DEMAND FOR JURY TRIAL

Drax Biomass Inc. ("Drax"), files this Verified Petition ("Petition") against Defendant, Milton J. Wood Fire Protection, Inc. ("MJ Wood"), averring as follows:

### Nature of the Action

1. Drax files this Petition seeking damages for breach of contract against MJ Wood.

2. This case arises out of an agreement between Drax and MJ Wood (the "Parties"), whereby MJ Wood agreed to design and install a fire suppression system at Drax's Port Allen facilities.

3. In violation of the Parties' agreement, MJ Wood's fire suppression system ignited a fire at Drax's Port Allen facilities and caused Drax approximately $2,844,643.00 in damages.

### Parties

4. Plaintiff, Drax Biomass Inc., is a foreign corporation organized under the laws of the State of Delaware, having its principal office in the State of Louisiana and currently doing business in the jurisdiction of this court. Drax may be served through its counsel of record: Chad V. Theriot, Jones Walker LLP, 201 St. Charles Ave, New Orleans, Louisiana 70170.

5. Defendant, Milton J. Wood Fire Protection, Inc., is believed to be a foreign corporation organized under the laws of the State of Florida. MJ Wood is registered and authorized to do business in the State of Louisiana and availed itself to the jurisdiction of this court when it conducted business in the Parish of West Baton Rouge. MJ Wood may be served through its registered agent of service of process: CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA 70816.

#101671439v8

**EXHIBIT A**

OCT 1 9 2023

**Jurisdiction and Venue**

6. This Court has subject matter jurisdiction pursuant to La. C.C.P. art. 2.

7. Venue is proper in the 18th Judicial District Court pursuant to La. C.C.P. art 76.1 because the work performed in relation to the Parties' agreement occurred in the Parish of West Baton Rouge. *See, Coleman v. Fisher Lumber Corp.*, (La. App. 2d Cir. 5/26/1996); 677 So. 2d 678.

**Factual Background**

8. Drax is an alternative sustainable energy company that produces bioenergy, or biomass, which is generated from low-grade wood, forest residues, and other plant materials. Drax produces biomass to provide an alternative to coal.

9. Drax operates a wood pellet processing plant in Port Allen, Louisiana, whereby Drax compresses low-grade wood materials into lightweight pellets. Upon compression, Drax ships these lightweight pellets from Port Allen to other facilities, where the wood materials are generated into biomass.

10. A photograph of Drax's Port Allen facilities is shown below:



Headhouses

11. Drax compresses wood materials into lightweight pellets in the dome shaped buildings—headhouses (hereinafter referred to as "Headhouse").

12. There are two Headhouses located at Drax's Port Allen facilities. The atmosphere within the Headhouses is extremely flammable, as they are confined spaces where carbon monoxide is emitted during the wood compression process.

13. Due to the extremely flammable atmosphere, Drax needs a reliable fire suppression system installed in both Headhouses.

#101671439v8

14. On or around November 2019, Drax invited MJ Wood to visit Drax's Port Allen facilities so that MJ Wood could observe the Headhouses and gain an understanding of the type of fire suppression system needed in the Headhouses.

15. MJ Wood held, and continues to hold, itself out to be an "industrial construction, engineering and fire protection firm with more than 50 years of experience" that "make[s] safety the first priority in every phase of every project."[1]

16. On or about December 6, 2019, MJ Wood informally recommended that Drax utilize the "STATx System" at their Headhouses. According to MJ Wood, the STATx System is a manually activated fire protection system similar to a dry chemical fire extinguisher.

17. Again, on or about January 16, 2020, MJ Wood informally recommended that Drax utilized the STATx System.

18. On or about July 20, 2020, MJ Wood submitted a formal proposal to Drax, again recommending the installation and use of the STATx System in the Headhouses.

19. On or about November 14, 2020, Drax and MJ Wood entered into a "Services Agreement" (the "Agreement"), whereby MJ Wood agreed to provided fire protection services at various Drax power plant locations.[2]

20. On or about November 19, 2020, Drax and MJ Wood executed the Agreement's Statement of Work.[3]

21. Under the Statement of Work, MJ Wood specifically agreed to design, procure, and install two separate fire suppression systems, or STATx Systems, at Drax's Port Allen Headhouses located at 1434 Pete Riviere Drive, Port Allen, Louisiana 70767.

22. The Statement of Work required Drax to pay MJ Wood $204,500.00 in exchange for MJ Wood's design, procurement, and installation of two STATx Systems.

23. Under the Statement of Work, the two STATx Systems were supposed to operate independently and individually providing two fire suppression systems for the two separate

---

[1] *See generally,* www.mjwood.com.
[2] The Agreement attached here as **Exhibit A**.
[3] The Agreement's Statement of Work attached here as **Exhibit B**.

#101671439v8

Headhouses. Additionally, the STATx Systems was supposed to be designed for manual release only.

24. According to the Statement of Work, the STATx System would require an operator to shut off equipment and any ventilation fans prior to discharging the STATx System fire suppressant.

25. Starting in early 2021, MJ Wood installed the "STATx System" at Drax's Port Allen facilities.

26. During installation, MJ Wood failed to label or identify the STATx System control systems panel.

27. On or about November 17, 2021, MJ Wood visited Drax's Port Allen facilities to deliver STATx System manual release station labels. However, MJ Wood did not place these labels, but instead left labels at Drax's facilities without further instruction, action, or prompting.

28. On or about November 18, 2021, facility automation technicians with Facility Automation, Inc., a third-party, independent contractor, conducted an annual fire alarm test at Drax's Port Allen facilities.

29. During this fire alarm test, because MJ Wood failed to properly label its STATx System, the system was engaged by Facility Automation Inc. at the first Headhouse ("Headhouse 1").

30. Within an hour of STATx System activation at Headhouse 1, Drax observed black smoke coming from the Headhouse. The STATx System had caused a fire at Headhouse 1.

31. The activation of STATx System from Headhouse 1 subsequently triggered the STATx System in the second Headhouse ("Headhouse 2"). The STATx System in Headhouse 2 was *never* manually activated but was instead tripped by the Headhouse 1 activation.

32. The defective STATx System activation in Headhouse 2 also ignited a fire.

33. The discharge from the STATx Systems, which was supposed to act as a fire suppressant, instead ignited fires in both Headhouses.

34. The West Baton Rouge Fire Department was immediately dispatched and both of the fires in both Headhouses were extinguished (hereinafter referred to as the "November 2021 Fires").

35. The November 2021 Fires caused significant smoldering damage to Headhouse 2. Further, the November 2021 Fires melted and destroyed the cable trays and wiring system throughout both Headhouses. As a result, Drax was forced to re-wire the electrical systems in both Headhouses.

#101671439v8

36. The total electrical repairs cost approximately $1,181,000.00.

37. The November 2021 Fires also caused disruption at Drax's Port Allen facilities and delayed Drax's subsequent shipments. As a result, Drax incurred port demurrage charges.

38. The total port demurrage charges related to the November 2021 Fires totals approximately $230,651.00.

39. Further, the November 2021 Fires caused Drax to experience lost production costs due to the Headhouses being out of commission during the repair of the fire damage.

40. Drax's total lost production costs equals approximately $1,432,992.00.

41. On or about December 29, 2022, Drax informed MJ Wood that it would be sending a formal claim to MJ Wood for the entire loss of no less than $2.8 million dollars. MJ Wood responded that it would assist Drax in implementing best practices going forward; however, MJ Wood did not agree to make payment on Drax's demand.

42. On or about April 10, 2023, Drax's counsel sent a formal demand letter to MJ Wood, again informing it that Drax was seeking $2,844,643.00 for the losses it incurred as a result of the November 2021 Fires. MJ Wood never directly responded to this letter.

### MJ Wood's Obligations

43. The Agreement, Article 2 (b), states in pertinent part:

> *"[MJ Wood] represents and warrants it shall perform the Services in conformance with the standards of care and practice appropriate to the nature of the Services and exercise the degree of diligence, skill and care generally accepted as the highest professional practices and procedures in their industry.* In the event [MJ Wood] fails to exercise such standards of care, [MJ Wood] shall re-perform any such deficient Services without cost or fee to [Drax], in a prompt and timely manner, and *shall be responsible for all damages or losses sustained by [Drax] as a result of [MJ Wood's] deviation from its standard of care."* (Emphasis Added).

44. The Agreement, Article 7, states in pertinent part:

> *"[MJ Wood] further warrants that Services will be performed in accordance with applicable specification and appropriate professional standards, shall be free from defects in materials and workmanship, and shall be fit for the purposes intended by [Drax]."* (Emphasis Added).

45. The Agreement, Article 9, states in full as follows:

#101671439v8

> "[MJ Wood] assumes all responsibility and sole liability for any claims or actions based upon, or arising out of (i) injuries, including but not limited to death, to persons, or (ii) damages, including but not limited to damages to or destruction of property, sustained in connection with or arising out of the performance of this Agreement and the Services by [MJ Wood], its agents, employees, subcontractors, or their agents and employees, to the extent (for that portion) attributable to the negligence, gross negligence or intentional misconduct of [MJ Wood], its agents, employees, subcontractors, or their agents and employees, and notwithstanding that [Drax], its agents, employees, or contractors may also contribute to the damage or injury. [MJ Wood] agrees to, and does hereby, indemnify and hold harmless [Drax], its affiliates and its directors, officers, agents, servants and employees *(Indemnified Parties)* in respect of any such matters and agrees to defend any claim or suit or action brought against the Indemnified Parties and to pay all damages, losses, costs and expenses of every kind and description, including reasonable attorneys' fees incurred by the Indemnified Parties, as a result of the claim or institution of any suit or action or the defense thereof, as well as any judgments or settlements therein or thereof to the extent of Contractor's indemnification obligations set forth in this Agreement. However, [MJ Wood]'s foregoing indemnity responsibility does not include indemnification to the extent (for that portion) of [Drax]'s or its employees' gross negligence or intentional misconduct. The indemnity and defense obligations owed hereunder further include, without limitation, the obligation of [Drax] to indemnify Indemnified Parties for any liability for workers' compensation benefits and medical expenses under the applicable workers' compensation statutes (of the state where the Services are being performed) owed to [MJ Wood]'s employees, regardless of the circumstances thereof. Without limiting the preceding, [MJ Wood] shall indemnify, defend and hold the Indemnified Parties harmless from all suits, fines, penalties, claims, losses, liabilities and expense, including reasonable attorney's fees, of every nature, in any manner arising out of, or incident to, or in connection with, the performance of this Agreement and the Services, attributable to patent or copyright infringement or to failure to comply with any applicable Federal, State or local laws, ordinances, rules or regulations. Without limiting the preceding, [MJ Wood] agrees to defend, indemnify and hold harmless the Indemnified Parties against (i) any liability for taxes payable under any worker's compensation, unemployment compensation or tax withholding laws for which the Indemnified Parties shall be finally adjudged liable with respect to performance of Services by [MJ Wood] for the Indemnified Parties; and (ii) any breach of any representation, warranty or covenant under this Agreement."

46. The Agreement, Article 10, states in pertinent part:

> "Prior to performing any Services under this Agreement, [MJ Wood] will provide [Drax] with a certificate of insurance as evidence that [MJ Wood] maintains the required insurance coverages. *General Liability and automobile liability should include Drax Biomass Inc. and its affiliates as additional insureds, with primary and non-contributory language.* General Liability, Auto Liability, and Workers Compensation Coverage should also contain a waiver of subrogation in favor of Drax Biomass Inc. and its affiliates." (Emphasis Added).

#101671439v8

47. The Agreement, Article 12 (l), states in full as follows:

> "If either Party commences any action or proceeding against the other Party to enforce or interpret this Agreement, the prevailing Party in such action or proceeding shall be entitled to recover from the other Party the actual costs, expenses and attorneys' fees (including all related costs and expenses), incurred by such prevailing Party in connection with such action or proceeding and in connection with obtaining and enforcing any judgment or order thereby obtained."

48. The Agreement's Statement of Work (**Exhibit B**, p. 1) provides that MJ Wood would supply "the engineering design necessary for a new Stat-X aerosol local application system. This will include a site survey and full engineering required for the system. Full engineering refers to the mechanical and electrical design as well as a supplied P&ID."

49. The Agreement's Statement of Work (**Exhibit B**, p. 1) provides that MJ Wood would install "two separate [STATx Systems] (one for each dome headhouse)" and each would "have two such manual releases, one located inside of the control room and the other located on the catwalk by the headhouse exit."

50. The Agreement's Statement of Work (**Exhibit B**, p. 1) provides that MJ Wood would design the STATx System "for manual release only, and will require the operator to shut off all conveying equipment and any ventilation fans prior to discharging the Stat-X zone, to assure the suppression agent doesn't get dispersed away from the activation area."

51. The Agreement's Statement of Work (**Exhibit B**, p. 2) provides that MJ Wood would supply four (4) "manual relate pull stations located outside the control room and head houses."

52. The Agreement's Statement of Work (**Exhibit B**, p. 7) provides that MJ Wood would procure and install "all equipment and components required for a fully functional system."

## Breach of Contract

53. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

54. Defendant, MJ Wood, breached the Agreement with Drax by failing to properly install two fully functional, separate fire suppression systems for manual release only at Drax's Port Allen Headhouses.

55. Upon information and belief, MJ Wood never named Drax or its affiliates as an additional insured under the required insurance policies as required under Article 10 of the Agreement. Thus,

#101671439v8

Defendant, MJ Wood, breached the Agreement with Drax by failing to name Plaintiff and its affiliates additional insureds on the required Project insurance policies.

56. The breached Agreement by MJ Wood caused Drax to sustain damages related to (a) repair of Headhouses; (b) port demurrage charges; and (c) lost productivity costs; which equal to approximately **$2,844,643.00** plus interest, attorneys' fees, and litigation costs.

WHEREFORE, Drax respectfully prays that this Honorable Court render judgment as follows:

a) In favor of Drax, and against Defendant, MJ Wood, awarding damages for breach of contract in the amount of $2,844,643.00, plus interest and attorneys' fees;

b) granting a trial by a jury for all issues; and

c) granting Drax any and all general, legal and equitable relief to which plaintiff is entitled and this Honorable Court empowered to grant.

Respectfully Submitted,

/s/ Chad V. Theriot
**CHAD V. THERIOT (La. Bar Roll No. 24298)**
**JONES WALKER LLP**
201 St. Charles Ave
New Orleans, LA 70170-5100
Tel.: (404) 870-7515
Fax: (504) 582-8583
ctheriot@joneswalker.com
*Counsel for Plaintiff, Drax Biomass Inc.*

**PLEASE SERVE:**

**Milton J. Wood Fire Protection, Inc.**
*Through its Registered Agent of Service of Process:*
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

#101671439v8